IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SIDEMAN & BANCROFT LLP,<br><br>　　　　Defendant.<br>_____ / | No. C 11-00736 WHA<br><br><br>**ORDER GRANTING PETITION<br>TO ENFORCE INTERNAL<br>REVENUE SERVICE SUMMONS** |

## INTRODUCTION

This is an action to enforce an internal revenue service summons for the law firm Sideman & Bancroft LLP to produce certain documents of its client, Mary Nolan, in its possession. The IRS seeks these documents in its criminal investigation of Mary Nolan. Sideman refused to produce the documents in response to the summons, invoking the Fifth Amendment and an attorney-client privilege. The United States brought the instant petition.

## STATEMENT

The following facts are taken from the declarations of Special Agent Mark Pahnke, Mary Rae Fouts, and Attorney Jay Weill, and the supplemental declaration of Attorney Weill.

Agent Pahnke of the Internal Revenue Service is conducting an investigation into whether Mary Nolan committed any offense connected with the administration or enforcement of the internal revenue laws with respect to the years 2005–08, and specifically whether Nolan attempted to evade or defeat tax or made a false declaration under penalty of perjury. Agent Pahnke is authorized to issue IRS summonses under the internal revenue code and treasury

1  regulations. On October 27, 2010, he issued an IRS administrative summons to Sideman &
2  Bancroft LLP, directing it to produce the following documents:

    FOR THE YEARS: 2007 – 2008

    Documents in your custody or control relative to the financial transaction of:

    MARY NOLAN
    THE LAW OFFICE OF MARY NOLAN
    MARY NOLAN TRUST

    Including but not limited to the following:

    Check Carbons (duplicates)
    Check Receipts
    File Folders of Expenses
    Payment Receipts
    QuickBooks Printouts
    Client Billing Records
    Rental Property Records
    Tax Returns and Supporting Schedules
    Monthly Client Billings
    Check Ledgers
    Copies of Bills
    Daytime Planners
    Credit Card Statements
    Personal Tax Related Expenses (ie: [sic] medical & dental)

    Included in the following containers:

    4 banker boxes
    3 large accordion folders

(Pahnke Decl. Exh. A). This summons is the subject of the instant government petition for enforcement.

    These documents were sought after the following had already occurred in Agent Pahnke's investigation. Agent Pahnke had attempted to obtain the documents through a search warrant executed at Nolan's residence and business on October 13, 2010. The documents were not there. Among the items found during execution of the warrant, however, Agent Pahnke found references to an income tax return preparer retained by Nolan named Mary Fouts. Fouts is an enrolled agent authorized to practice before the IRS and a certified financial planner.

    Fouts had been retained by Nolan to provide her with tax and financial planning services. In September 2010 Nolan requested that Fouts prepare her income tax return for 2009 and amended returns for 2007 and 2008. In order for Fouts to do her work, Nolan provided her the

2

documents that are the subject of the instant petition. From October 1 through 13, Fouts reviewed these records and noted certain characteristics that made them distinctive, which she reviews in her declaration.

On October 13, Nolan and Fouts spoke by phone, and Nolan told Fouts that the IRS was executing a search warrant of her property. Nolan then went to Fouts's office and signed the 2009 tax return that Fouts had prepared. After Nolan left, Fouts realized that the search warrant probably covered the records in her possession, so she called Nolan's attorney, Richard Guadagni, to confirm that she was in possession of documents that were covered by the warrant and to see how to get them to the IRS. Attorney Guadagni agreed that the documents in Fouts's possession were covered by the warrant and came to pick up the documents later that day. From there, Fouts believed that Attorney Guadagni was going to turn the documents over to the IRS. He did not. Instead, he gave them to Nolan's new attorney, Jay Weill of Sideman & Bancroft. Fouts states that she would not have given the documents to Attorney Guadagni if she had known that he would not give them to the IRS.

Agent Pahnke then drafted the instant summons to Sideman, identifying the documents as stated above based on a detailed description by Fouts. Agent Pahnke served the summons on Sideman on October 27. Sideman, via Attorney Weill, has refused to produce the documents — or a privilege log — based on claims of Fifth Amendment and attorney-client privilege.

Fouts states that the description in the summons stated above accurately summarizes the documents she reviewed, including the types of boxes and folders the documents were in when she saw them last. She also states that if she saw these records again she could identify and authenticate them, based on her review of them and their distinctive characteristics and contents.

At the hearing on the instant petition, counsel for Nolan submitted a supplemental declaration, which shows that subsequent to the recounted events, Fouts was served directly and complied with a summons to produce additional documents concerning Nolan. The declaration also appends a statement of account from Fouts to Nolan for Fouts's services. The statement includes a description of services for each time entry, and counsel argued at the hearing that these

3

1  descriptions evidence that Fouts only reviewed the 2007 and 2008 documents subject to the
2  instant summons for 45 minutes.

**ANALYSIS**

In *Fisher v. United States*, 425 U.S. 391 (1976), the Supreme Court set forth the guiding principles applicable to our situation. That decision held that taxpayers' Fifth Amendment privilege was not violated by enforcement of a documentary summons directed toward their attorneys, for production of accountants' documents that had been transferred to the attorneys in connection with an IRS investigation. Regarding attorney-client privilege, "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Id.* at 402–04.

Sideman does not argue that the documents are subject to attorney-client privilege beyond the Fifth Amendment rights of its client, Nolan. Sideman solely argues that the documents were turned over by Nolan in the course of her seeking legal advice, and that Nolan would be allowed to assert her Fifth Amendment rights to prevent production of the documents if they were in her possession. Therefore, this order must analyze *whether Nolan would be allowed to assert her Fifth Amendment rights to prevent production of the documents if they were in her possession*.

The Fifth Amendment "would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications." *Id.* at 409. Whether the act of producing the documents constitutes a testimonial admission in violation of the Fifth Amendment depends "on the facts and circumstances of particular cases." *Id.* at 410; *see also Doe v. United States*, 465 U.S. 605, 613–14 (1984).

Our court of appeals has further held as follows. *First*, a court should consider whether production of the documents would be testimonial as to the documents' existence or location:

> *When the "existence and location" of the documents under subpoena are a "foregone conclusion"* and the witness "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]," then *no Fifth Amendment right is touched* because the "question is not of testimony but of surrender." The government "bears the burdens of production and proof on the questions of . . . possession[] and existence of the summoned

4

documents." When deciding whether the government has met its burdens of production and proof, courts should look to the "quantum of information possessed by the government before it issued the relevant subpoena." . . .

> The government was not required to have actual knowledge of the existence and location of each and every responsive document; *the government was required, however, to establish the existence of the documents sought and Doe's possession of them with "reasonable particularity"* before the existence and possession of the documents could be considered a foregone conclusion and production therefore would not be testimonial.

*In re Grand Jury Subpoena, Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004) (citations omitted; emphasis added).

This order finds that the government has carried its burden of showing that at the time the summons was issued it had established the existence and possession of the documents at issue here with at least reasonable particularity. From talking to Fouts, Agent Pahnke knew very specifically what documents existed and had been turned over to Sideman. The government knew what was in Sideman's possession from Fouts, and so was able to describe in the summons the characteristics and number of boxes and folders in which the documents were being kept. Accordingly, the existence and location of the documents was a foregone conclusion, and Sideman adds little or nothing to the sum total of the government's information by conceding that it in fact has the documents.

*Second*, a court should consider whether production of the documents would be testimonial as to the documents' authenticity:

> The authenticity prong of the foregone conclusion doctrine requires the government to establish *that it can independently verify that the compelled documents "are in fact what they purport to be."* Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into *whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents*, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents.

*Id.* at 912 (citations omitted; emphasis added).

This order finds that the government has carried its burden of showing production of the documents would not be testimonial because the act of production would not authenticate the documents. The summons specifically identified the documents that were in Fouts's possession based on her description. This is not a case in which a respondent would have to use knowledge

5

1   and judgment to sift through, select, assemble, and produce the documents.*  In this case the
2   documents were already in a circumscribed collection when they were in the possession of Fouts,
3   who reviewed them in the course of her work on Nolan's income tax returns.  She can therefore
4   authenticate them in any subsequent proceeding.  When it issued the summons, the government
5   "had prior knowledge that the documents were in the custodian's possession and the government
6   [can] independently confirm their existence and authenticity" through the testimony of Fouts.  *Id.*
7   at 913 (citing *Fisher*, 425 U.S. at 412–13).  The government would not need to rely on the
8   production by Sideman to demonstrate that the records are what they appear to be.

9         Nevertheless, Sideman repeatedly asserts that "the act of producing the documents in
10  Sideman's custody would confirm the existence, possession and authenticity of such documents"
11  (Opp. 3).  This argument is based on an erroneous factual premise that is divorced from the facts
12  of this case.  Sideman states, "[p]rior to the Summons being issued here, the Government knew
13  only that Nolan had delivered a set of documents to Fouts, that Fouts no longer had the
14  documents, and that Nolan's 2007 and 2008 federal income tax returns had already been filed and
15  had been under civil examination" (Opp. 6).  Not so.  The government knew much more than that.
16  It knew from Fouts, based on her review of the documents immediately prior to turning them over
17  to Nolan's attorney, how many documents there were and what the collection consisted of.
18  Sideman goes on to characterize the summons as "broadly sweeping" (Opp. 6).  Yet the summons
19  specifically identifies the documents previously possessed by Fouts, even stating that they are
20  contained in 4 banker boxes and 3 large accordion folders.

21        At the hearing on the petition, counsel for Nolan argued, based on a statement of account
22  from Fouts to Nolan for Fouts's services, that Fouts only reviewed the 2007 and 2008 documents
23  subject to the instant summons for 45 minutes.  His implication was that she cannot authenticate

---

\*   Counsel for Nolan stated in passing at the hearing that if the instant petition is granted, Nolan would have to go through the records turned over by Fouts in order to limit the documents produced to those "responsive" to the summons.  This was the first time such a wrinkle has been asserted.  It was not raised in briefing, nor was it explained at the hearing.  As such, this order will maintain the factual premise on which briefing and argument were otherwise based — that the production at issue is a production of all of the documents turned over by Fouts.

6

them. This is an implication only. Her declaration definitively states under penalty of perjury, "I am confident that if I saw Nolan's 2007–2008 documents again, I could identify and authenticate them, based on the personal knowledge I gained from reviewing and working with them and based on their distinctive characteristics and contents," described previously in her declaration. This order does not accept as definitive the assertion that Fouts only reviewed the documents for 45 minutes based on review of the statement of account. Regardless, counsel's possible reading of the statement of account does not undermine the finding of this order that Fouts could authenticate the documents based on the statements in her declaration.

Therefore, the existence, possession, and authenticity of the documents are a foregone conclusion and production would accordingly not be testimonial. Nolan's Fifth Amendment rights would not be implicated by Sideman's production of the documents in accordance with the IRS summons.

Sideman argues that the decision of *In re Grand Jury Proceedings on Feb. 4, 1982*, 759 F.2d 1418 (9th Cir. 1985) ("*Terry*"), is "similar to the [situation] before the Court here" (Opp. 5). *Terry* found that: "Many of the[] documents [at issue] belong to, and were prepared by, Terry, himself. Terry's production of them could therefore relieve the government of proving the existence, possession, or authenticity of the records, and, thus could be incriminatory." *Id.* at 1421. That is not the situation we have here. It is true that some of the documents at issue here may have been prepared by Nolan. That is not the relevant point of *Terry*, however. The relevant point is that Terry's *production of the documents could have relieved the government of authenticating them independently*. Again, the issue is whether the *production sought by the summons* provides authenticity to the documents, which implicates the Fifth Amendment. But here, Fouts can testify that Nolan and/or her attorneys gave the documents to Fouts for purposes of preparing tax returns, which would authenticate the documents. Fouts's declaration makes it clear that if she saw these records again she could identify and authenticate them based on her review of them and their distinctive characteristics and contents. "[I]t is not illegal to seek accounting help in connection with one's tax returns." *Fisher*, 425 U.S. at 412. In other words, the fact that Fouts had the documents in the first place is not incriminating. Unlike in *Terry*, the

7

*production by Sideman* would have no authenticating value to the government. The production will therefore not implicate Nolan's Fifth Amendment rights. *See United States v. Bright*, 596 F.3d 683, 693 (9th Cir. 2010) ("The government did not need the Brights to authenticate such documents, because the records could be independently authenticated by banking officials.").

Sideman also relies on the orders of Judge Marilyn Hall Patel in an under-seal proceeding in this district, which it has access to presumably because it was a party therein. *See In re Grand Jury Subpoena to Richard Sideman, Sideman and Bancroft LLP Dated June 14, 2001*, No. CR-01-219-MISC-MHP ("2001 proceeding"). Sideman argues that these orders support the proposition that while the existence and possession of the documents may be a foregone conclusion, their authenticity is not, because, even if Fouts authenticated them, Nolan's initial production of the documents to Fouts "would be a necessary link in the evidentiary chain," thus incriminating Nolan. There are three reasons why these orders do not counsel for denial of the instant petition.

*First,* the orders in the 2001 proceeding *did* enforce production of certain categories of documents and conditioned production of others on the government's grant of use immunity to the respondent. Yet as to use immunity, the Supreme Court has "decline[d] to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request [by the government] that the statute requires." *Doe*, 465 U.S. at 616. This holding came after and thus abrogated any suggestion to the contrary in *United States v. Porter*, 711 F.2d 1397 (7th Cir. 1983), a decision also relied on by counsel for Nolan at the hearing on the instant petition.

*Second*, the orders in the 2001 proceeding held that production of certain records would point the government to other sources of potentially incriminating evidence, and that production of the records would thus be incriminating and testimonial, in violation of the Fifth Amendment. It is axiomatic, however, that "[w]here the preparation of business records is voluntary, there is no compulsion present, and consequently the contents of those records are not privileged by the Fifth Amendment." *In re Grand Jury Subpoena*, 383 F.3d at 909 (citation omitted). It is not

8

contested here that the documents in Sideman's possession were created voluntarily, so the contents of the documents are not protected by the Fifth Amendment.

*Third*, the orders in the 2001 proceeding also held that the documents could not be authenticated by the accountant alone, so authenticity was not a foregone conclusion as required by *Fisher* and its progeny. For reasons stated above, however, in our case Fouts could authenticate the documents at issue here. The Fifth Amendment is concerned with whether the *production by Sideman* is necessary to authenticate the documents. It is not. *Accord Bright*, 596 F.3d at 693.

Lastly, this order must address the fact that the summons *could* be construed to call for the production of documents including ones other than those turned over by Fouts to Attorney Guadagni on October 13, 2010, and thereafter given to Sideman. Again, the summons requires production of the following:

> FOR THE YEARS: 2007 – 2008
>
> Documents in your custody or control relative to the financial transaction of:
>
> MARY NOLAN
> THE LAW OFFICE OF MARY NOLAN
> MARY NOLAN TRUST
>
> Including but not limited to the following:
>
> Check Carbons (duplicates)
> Check Receipts
> File Folders of Expenses
> Payment Receipts
> QuickBooks Printouts
> Client Billing Records
> Rental Property Records
> Tax Returns and Supporting Schedules
> Monthly Client Billings
> Check Ledgers
> Copies of Bills
> Daytime Planners
> Credit Card Statements
> Personal Tax Related Expenses (ie: [sic] medical & dental)
>
> Included in the following containers:
>
> 4 banker boxes
> 3 large accordion folders

9

(Pahnke Decl. Exh. A). It is possible that Sideman, as counsel for Nolan, has documents that would be responsive to the summons other than those turned over by Fouts. Yet rather than limiting its production to the Fouts documents, Sideman has simply refused to produce anything in response to the summons. Moreover, Sideman has not told the Court whether it has in its possession any more than the Fouts documents that would be responsive. Yet the government clearly seeks to enforce this summons to obtain the Fouts documents. As such, and to be clear, this order grants the government's petition only insofar as the summons lists the documents sought. In other words, this order strikes the language "including but not limited to the following" from the summons, and replaces it with "specifically the following," leaving to a future day whether there is any need or occasion to compel more.

## CONCLUSION

For the foregoing reasons, the government's petition to enforce the IRS summons against Sideman & Bancroft LLP — as limited by this order — is **GRANTED**. Respondent shall turn over the subject documents within **SEVEN CALENDAR DAYS** of the date of this order.

**IT IS SO ORDERED.**

Dated: April 8, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE